Case: 1:26-mj-000148
Assigned To: Judge Faruqui, Zia M.
Assign. Date: 8/25/2026
Description: COMPLAINT W/ARREST WARRANT

# STATEMENT OF FACTS

1. Your affiant, Joshua Miller is a Special Agent with the Federal Bureau of Investigation ("FBI"), and is assigned to squad CR-3, Transnational Organized Crime, Western Hemisphere, located at the FBI Washington Field Office, in Washington, D.C. As discussed at length below, your affiant, with participation from the Montgomery County Police Department ("MCPD") is currently investigating a drug trafficking conspiracy that is distributing large quantities of cocaine in the District of Columbia, as well as the greater Washington, D.C. Metropolitan Area.

2. As set forth below, this investigation established that [redacted] ("[redacted] was engaged in large-scale narcotics trafficking and that Moussa KONTE ("KONTE") was one of his narcotics associates. Evidence recovered from [redacted] phone showed repeated drug-related communications between [redacted] and KONTE, including FaceTime calls during which KONTE displayed kilogram-sized quantities of suspected narcotics. Law enforcement subsequently identified KONTE's residence in Washington, D.C., and on August 25, 2026, executed a District of Columbia Superior Court search warrant there, recovered approximately 739 grams of pills suspected of containing fentanyl, approximately 951 grams of suspected cocaine, and numerous items associated with narcotics distribution. Based on the evidence described *infra*, there is probable cause to believe that KONTE committed violations of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(vi), and (b)(1)(B)(ii), namely, possession with intent to distribute 400 grams or more of a mixture and substance containing a detectable amount of fentanyl and 500 grams or more of a mixture and substance containing a detectable amount of cocaine.

3. During the summer of 2025, members of MCPD became aware of a subject posting photographs and videos on social media of himself in possession of numerous firearms. Members

of the MCPD, 3rd District Community Action Team, regularly monitor social media for accounts known to be operated by subjects known to be involved in criminal activity in the Silver Spring area. On or about May 24, 2025, a video was posted on the Instagram account with username "[redacted]" and the unique Instagram ID number of "[redacted]," which showed a black male believed to be [redacted] riding in the passenger area of a vehicle while holding a large stack of suspected United States currency in his right hand and a "Draco" AK pistol in his left hand. Additionally, law enforcement observed other social media photographs of [redacted] in possession of multiple firearms.

4. Law enforcement identified [redacted] as the individual in the video and photographs through previous arrests and investigations involving [redacted]

5. Between July 2025 and continuing through June 2026, when he was arrested, law enforcement actively investigated [redacted] for narcotics and firearms trafficking. During this time, law enforcement met with [redacted] on multiple occasions and conducted undercover controlled purchases of cocaine, fentanyl, and firearms.

**<u>October 9, 2025 Controlled Purchase</u>**

6. On or about October 9, 2025, [redacted] agreed to travel to McLean, Virginia, to meet with a Fairfax County Police Department ("FCPD") detective, operating in an undercover capacity ("FCPD UC") for the purpose of selling the FCPD UC two ounces of cocaine and two ounces of fentanyl powder. Prior to the meeting, [redacted] confirmed he had the narcotics via a FaceTime call. [redacted] then traveled from Maryland to McLean, Virginia under continuous law enforcement surveillance, where he met with the FCPD UC and exchanged the suspected cocaine and fentanyl for $4000 of Official Government Funds ("OGF"). The purchased narcotics were submitted to the Montgomery County Police, Forensic Chemistry Laboratory for testing. The

result of that testing was positive for 61.57 grams of cocaine and 61.43 grams of a Carfentanil/Fentanyl mixture.

**November 18, 2025 Controlled Purchase**

7. On or about November 18, 2025, [redacted] agreed to travel to McLean, Virginia, to meet with the FCPD UC for the purpose of selling the FCPD UC two ounces of cocaine and two ounces of fentanyl powder. Prior to the meeting, [redacted] and the FCPD UC communicated via iMessage on [redacted] known phone number, [redacted], which has been associated with [redacted] through this investigation. Detectives from MCPD established surveillance around [redacted] residence, 1203 Fidler Lane, Silver Spring, Maryland. [redacted] was observed by MCPD surveillance exit his residence empty handed and meet with a subject, known to law enforcement as [redacted] and an unidentified subject ("UNSUB 1") in front of the residence. A few moments later, a Toyota sedan arrived, and the unidentified driver ("UNSUB 2") exited the vehicle. [redacted] entered the driver's seat and [redacted] UNSUB 1 and UNSUB 2 entered the vehicle. [redacted] drove the car a few blocks, parked and exited with two large black duffle bags. [redacted] and UNSUB 1 exited the vehicle and walked away. UNSUB 2 returned to the driver's seat of the vehicle and departed the area. [redacted] walked back into his residence with the two bags. Law enforcement observed that [redacted] had a pistol in the front waistband of his pants during this event.

8. A short time later that same day, [redacted] exited the residence with the two black duffle bags and placed them in his Mercedes Benz. [redacted] then made contact with the driver of a waiting Chevrolet Suburban. [redacted] then drove his Mercedes Benz into a parking garage, followed by the Chevrolet. [redacted] parked the Mercedes Benz and entered the Chevrolet. [redacted] then traveled from Maryland to McLean, Virginia under continuous law enforcement

surveillance, where he met with the FCPD UC. [redacted] exited the Chevrolet with one of the large black duffle bags and entered the FCPD UC's vehicle. [redacted] produced a large vacuum/heat sealed plastic bag with blue pills and another vacuum/heat sealed plastic bag with suspected cocaine. The FCPD UC asked [redacted] about the pills and [redacted] stated that the bag contained 10,000 pills and that he wanted $1.00 per pill. [redacted] further stated the bag containing the suspected cocaine was half a kilogram of cocaine. [redacted] told the FCPD UC that he would sell the half-kilogram of cocaine to the FCPD UC for $12,000 and that if the FCPD UC wanted to purchase a full kilogram, [redacted] would charge him $20,000. The FCPD UC informed [redacted] that he did not have enough money to purchase the 10,000 pills at that time and [redacted] agreed to give the FCPD UC the pills and that the FCPD UC could pay him later. [redacted] then exchanged the two ounces of suspected cocaine and two ounces of suspected fentanyl with the FCPD UC for $4000 of OGF. The purchased narcotics were submitted to the Montgomery County Police, Forensic Chemistry Laboratory for testing. The result of that testing was positive for 56.07 grams of cocaine and 56.17 grams of a fentanyl mixture. A sampling of 15 pills was tested but failed to return a positive result for a controlled substance.

9. On or about December 5, 2025 the Honorable Lindsey R. Vaala, United States Magistrate Judge for the Eastern District of Virginia, authorized a search warrant for information associated to an iCloud account used by [redacted] with telephone number [redacted] and Apple Digital Signal Identifiers [redacted] and [redacted] stored on premises controlled by Apple, Inc. (hereinafter the "[redacted] iCloud Warrant").[1]

[1] During this investigation, several warrants were sworn out of the Eastern District of Virginia because members of the drug trafficking organization were living in Virginia at that time.

10. Law enforcement analyzed data from the [redacted] iCloud Warrant, which included, among other information, phone contacts, photographs, social media chats, text messages, and videos. Law enforcement observed the photograph depicted below, which was sent from KONTE to [redacted] Based on my training, experience, and knowledge of this investigation, the photograph shows what appears to be a kilogram of narcotics as well as a "G Spot V2 Glock FRT".[2]




**[redacted] Arrest and Search Warrant**

11. On or about June 24, 2026, [redacted] was arrested by MCPD for traffic and weapons violations and remains in custody. A search of [redacted] vehicle, following his arrest, resulted in the seizure of a Glock 23 handgun, with a loaded magazine and a round in the chamber, suspected fraudulent identification, an Apple iPhone, over $1,000 in U.S. currency, several debit cards, a prescription pill bottle, and five heat-sealed bags, each containing approximately one pound of suspected cannabis. On or about June 24, 2026, an MCPD search warrant of

---

[2] "FRT" stands for "Forced Reset "Trigger". A "G Spot V2 Glock FRT" is an aftermarket trigger system designed for Glock pistols which allows for more rapid follow up shots.

[redacted] apartment yielded additional evidence consistent with narcotics and firearms trafficking, including approximately 3,000 pressed fentanyl pills, approximately $28,000 in U.S currency, a firearm, a money counter, suspected cocaine and other items.

12. On or about June 29, 2026, Montgomery County Maryland Circuit Court Judge James McCullough authorized a search warrant for an Apple iPhone ("[redacted] Apple iPhone") located on the driver's seat of the vehicle [redacted] was operating at the time of his arrest.

**Probable Cause as to KONTE**

13. Law enforcement analyzed data contained on [redacted] Apple iPhone and observed interactions between [redacted] and KONTE using phone numbers 202-460-1535 (x1535) and 202-937-5505 (x5505), both associated to KONTE through this investigation, dating as far back as December 24, 2025, and as recent as June 24, 2026 ([redacted] arrest). The communications appeared to be drug related conversations. For example, KONTE on 202-460-1535, sent [redacted] the following message, "Let me grab a deuce." [redacted] Apple iPhone responded, "I'm in silver spring," to which KONTE noted that he would send his "driver to scoop". [redacted] affirmed, "bet." KONTE and [redacted] continued to coordinate with KONTE later sending three messages, "He there red cab truck . . . He on the side of twin towers . . . Like that street where Qdoba used to be." [redacted] responded, "Bet." KONTE asked, "Put another deuce to side for me."

14. Based on my training and experience and these communications, I believe KONTE and [redacted] coordinated a narcotics transaction for a "deuce," referring to drugs in a quantity of two. KONTE sent an individual driving a red cab truck to meet [redacted] to obtain the illegal

narcotics and provided the location of this individual. KONTE then asked [redacted] to set aside another "deuce" for him, referring to drugs in a quantity of two.

15. On April 20, 2026, KONTE contacted [redacted] on 202-937-5505. In two messages, KONTE sent [redacted] "Yo my phone dropped in water hit me on this joint" and "Its jew". On April 21, 2026, utilizing 202-937-5505, KONTE appeared to warn [redacted] on the presence of law enforcement by stating "Leave to the left not right. 12 posted on i street" and "By south cap." Based on my training and experience, I believe that in this statement, KONTE is warning [redacted] of law enforcement's presence following a meeting by the two of them. Messages of a similar nature to those discussed above occurred between [redacted] and KONTE until [redacted] arrest on June 24, 2026.

16. On or about June 23, 2026, at approximately 9:21 pm, [redacted] contacted KONTE via FaceTime on 202-460-1535. [redacted] video recorded a portion of this call. The recording depicted an individual believed to be KONTE, holding what appeared to be a kilogram-sized quantity of suspected narcotics laying in a tin foil pan. In the upper left corner of the video, KONTE's nickname "Jew" appeared. As depicted in the video, [redacted] took a screenshot. The individual then opened a cabinet at which point several wrappers, which appeared to be kilogram packaging, fell out. The individual picked a specific wrapper then walked back to the suspected kilogram and held the wrapper next to it as if to indicate the kilogram was previously wrapped in this packaging. Excerpts of this recorded call are depicted below.






The individual then walked to another room a short distance away to what appears to be a walk-in closet with personal belongings visible on the floor, and stepped over what appeared to be an extended magazine (circled in red) and showed [redacted] what appeared to be another kilogram.



As the call concluded, KONTE's contact information, as it was saved on [redacted] phone appeared, which showed the name "Jew" and phone number 202-460-1535.

17. A federal subpoena to the service provider for KONTE's phones failed to provide subscriber information, however, the phones are associated to KONTE through interactions with [redacted] Apple iPhone, which include contact information for KONTE's known nicknames, toll analysis, as well as law enforcement data base checks associated to pawn shops. Specifically, an Arlington County Police Report indicated that an individual with the same name and date of birth as KONTE provided phone number 202-937-5505, when pawning two items on May 12, 2026. Agents observed communications where KONTE, using x5505, self identifies by the moniker "Jew". Agents noted that the contact for x1535 was saved under the name "Jew", which is also visible during video calls described in further detail below.

18. On or about June 24, 2026, at 8:45 pm, [redacted] had an outgoing FaceTime video call with KONTE that lasted just over one minute. During this call, [redacted] took a screenshot of what appeared to be a quantity of suspected narcotics and a digital scale. The photograph below is the screenshot taken by [redacted] when speaking to KONTE:



19. On June 24, 2026, at approximately 8:57 pm, [redacted] was arrested by MCPD.

20. On August 25, 2026, a District of Columbia Superior Court search warrant was issued by Judge Robert Rigsby (2026 CSWLD 003754) for the premises associated with KONTE throughout this investigation, located at [redacted] known as [redacted]" ("the Premises"). The affidavit supporting the warrant established that KONTE had resided at the Premises since approximately April 2023. A manager at the Premises confirmed to investigators that KONTE accessed the Premises shortly before execution of the warrant.

21. Further, Premises management provided law enforcement with access log records that detail KONTE's access of the apartment complex on June 23, 2026. Notably, the access records indicated that KONTE accessed an elevator at approximately 8:48 PM, and a passageway vestibule at approximately 9:34 PM, both in close proximity to the time of the recorded video call, approximately 9:21 PM, discussed *supra*. These records therefore placed KONTE at or in the immediate vicinity of the Premises at approximately the same time that he displayed the suspected narcotics to [redacted] during the Face Time call.

22. On or about July 31, 2026, the Honorable Ajmel A. Quereshi, U.S. Magistrate Judge for the United States Court for the District of Maryland, authorized GPS tracking on both of KONTE's phones. GPS location information from those phones consistently placed the devices at or in the vicinity of the Premises during overnight hours.

23. Law enforcement conducted a firearms registration check via the Metropolitan Police Department for KONTE by name and the Premises address which returned no firearms were registered to KONTE Premises.

24. On August 25, 2026, the warrant was executed. At approximately 6:06 a.m., the entry team knocked and announced law enforcement's presence. KONTE came to the door and was detained. KONTE was the only occupant in the home during the execution of the search warrant. Upon searching the Premises, the following items were seized throughout the one bedroom apartment:

- Three bags of blue pills stamped with "M30" weighing a total amount of approximately 739.37 grams suspected of containing fentanyl.
- A heat-sealed bag containing a pressed brick of white powder weighing approximately 513.57 grams suspected of containing cocaine.
- Two ziplock bags containing pressed and loose white powder weighing approximately 420.65 grams suspected of containing cocaine.
- Multiple kilogram sized, heat-sealed bags that had been previously opened, some containing white powder residue.
- Approximately (3) pounds of marijuana.
- A vacuum sealer.
- A digital scale covered in white powder residue.
- Approximately $8,000 amount of U.S. currency.
- A money counter.
- A kilogram press approximately the size of half a kilogram.
- Two handgun magazines, one of which was extended.
- Approximately 16 rounds of ammunition.

25. On August 25, 2026, MCPD conducted a field test of the narcotics seized from KONTE's residence, which tested positive for the presence of fentanyl and cocaine, respectively.

26. Based on my training and experience, the quantity and manner of packaging of the suspected narcotics, together with the vacuum sealer, digital scale, money counter, kilogram press, currency, and firearm magazines, are consistent with possession of narcotics for distribution rather than personal use.

27. Based on the foregoing, your affiant believes there is probable cause to believe that KONTE committed violations of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(vi), and (b)(1)(B)(ii), namely, possession with intent to distribute 400 grams or more of a mixture and substance containing a detectable amount of fentanyl and 500 grams or more of a mixture and substance containing a detectable amount of cocaine.

Joshua Miller, Special Agent
Federal Bureau of Investigation

SWORN AND SUBSCRIBED BEFORE ME ON THE 25th DAY OF AUGUST 2026.

THE HONOURABLE ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE
FOR THE DISTRICT OF COLUMBIA